Dear Secretary Winstead:
You have requested our opinion concerning the involvement of a private entity in the construction and operation of a Maryland toll highway, either on its own or in partnership with the Maryland Department of Transportation ("MDOT") or the Maryland Transportation Authority ("MdTA"). Specifically, you ask (1) whether under current law a private entity may enter into a public/private venture with either MDOT or the MdTA to finance, construct, maintain, and operate a Maryland highway while charging a user toll to recoup the investment; and (2) whether State procurement and minority business enterprise laws would apply to such a venture.
Our opinion is as follows:
1. There are significant legal and practical impediments to wholly private construction and operation of a toll highway. However, the MdTA, acting on behalf of MDOT, has sufficient statutory authority to enter into an agreement with a private entity relating to the supervision, financing, construction, operation, maintenance, and repair of Maryland transportation facilities projects, including toll highways.
2. State procurement and minority business enterprise laws may or may not apply to such an agreement for a toll highway, depending on the nature of the agreement. If the State agency's role were solely that of lessor of property for the highway, these laws would not apply.
 I Private Ownership and Operation
A. Authority
State law does not prohibit a private entity from owning, constructing, operating, or maintaining a highway. Under § 8-204(c) and (i) of the Transportation Article ("TR") Article, Maryland Code, the State Highway Administration ("SHA") is responsible for the design, construction, and maintenance of the "State highway system." The "State highway system" is "the system of State-owned primary and secondary highways throughout this State." TR § 8-101(q) (emphasis added). SHA has no responsibility or powers with respect to the construction or maintenance of any highways except State highways. TR § 8-633. SHA's role does not preclude purely private highway construction and operation.
Whether a county might prohibit a privately constructed or operated highway presents a different issue. Charter and code home rule counties, for example, have authority "to regulate the streets, roads, and highways within the county (other than State highways)." 79 Opinions of the Attorney General ___ (1994) [Opinion No. 94-018, at 3 (March 25, 1994)]. See
Article 25A, § 5(K) and (T) (applicable to charter and code home rule counties); Article 25A, § 5(S) (applicable to charter home rule counties). Exercising this authority, a home rule county might choose to regard non-State highway construction as a county function only.[1]
B. Eminent Domain
The construction of an economically feasible private toll road would require the acquisition of extensive rights-of-way in developed areas. Assuming that the private developer could not purchase all of the necessary property rights in market transactions, the developer would need to condemn property. But no statute authorizes a private developer to condemn land for highway construction.
To be sure, Article 23, § 328 refers to the possibility of land for a "turnpike" being "obtained by agreement with the owners thereof, or by condemnation." However, this reference merely reflects the possibility that another law might give a turnpike corporation (or a railway company, also mentioned in § 328) condemnation power. Cf. Article 23, § 197 (grant of condemnation power to railroad companies). Condemnation powers are granted to SHA and the State Roads Commission. TR § 8-302 (SHA); Article III, § 40B of the Constitution and TR §§ 8-318 and 8-334 (State Roads Commission).[2] Therefore, a private developer needing to condemn land would perforce have to enter a public/private partnership.
C. Tolls
An ancient provision subjects a private operator of a "turnpike" to rate regulation by county commissioners. Article 23, § 330. The rate of return is limited to eight percent. This provision, too, may prove to be a formidable barrier to a purely private toll road.
 II Public/Private Partnership
The Maryland Transportation Authority, established under TR § 4-201, is authorized to act on behalf of MDOT and "has those powers and duties relating to the supervision, financing, construction, operation, maintenance, and repair of transportation facilities projects as are granted to it by this title or any other provisions of law." TR § 4-204(a). A "transportation facility" includes airport facilities, highway facilities, port facilities, railroad facilities, and transit facilities. TR § 3-101(1). "Highway facilities" include the "development and construction in new locations of new highways necessitated by traffic demands to become part of the State highway system . . . ." TR § 3-101(g)(2). A "transportation facility project" includes any "project for transportation facilities that the [MdTA] authorizes to be acquired or constructed." TR § 4-101(i).
Further, the MdTA "may make any contracts and agreements necessary or incidental to the exercise of its powers and performance of its duties." TR § 4-205(c). The MdTA is authorized to set and collect tolls with regard to transportation facilities projects and may:
 (i) Fix, revise, charge, and collect rentals, rates, fees, tolls, and other charges and revenues for its use or for its services, and
 (ii) Contract with any person who desires its use for any purpose and fix the terms, conditions, rentals, rates, fees, tolls, or other charges or revenues for this use.
TR § 4-312(a)(2).
An essential component of any plan to privately finance road construction and operations is the extent to which the private entity can recoup its investment by charging tolls. The MdTA is authorized to fix and charge tolls for the use of transportation facilities projects, TR § 4-312(a)(2), while SHA has no specified authority to charge tolls. In fact, while the State Roads Commission was authorized to charge tolls prior to the creation of the MdTA in 1970, effective July 1, 1971, all power, authority, obligation, function, duties, and discretion that the State Roads Commission had for existing toll roads was transferred to the MdTA. Chapter 526, Laws of Maryland 1970.
To the extent that a private entity provides the financing for a State-owned toll road, the MdTA would be authorized to permit tolls to be charged by the private party to pay for the construction, maintenance, operation, and repair of the road.[3] The tolls collected would allow the private party to recoup its investment while also providing a source of revenue for payments of rent to the State for the land or, potentially, for the cost of other State involvement.
By creating the MdTA in 1970, the General Assembly intended to transfer exclusive authority to charge tolls for State-owned roads, bridges, and tunnels to the MdTA. Nothing in the law precludes a private entity from contracting with the MdTA to participate in the construction of a toll road. It is therefore our conclusion that, to the extent that a State agency is to be involved in a public/private partnership with a private entity to finance, construct, operate, and maintain a toll road, that agency should be the MdTA, because the MdTA, unlike SHA, is authorized to charge and collect highway tolls.
 III Procurement and Minority Business Enterprise Laws
The Procurement Law, Division II of the State Finance and Procurement ("SFP") Article, generally applies to "each procurement by a unit." SFP § 11-202. The minority business enterprise law, SFP Title 14, Subtitle 3, likewise applies to most "procurements." SFP § 14-302. Therefore, whether these laws apply to a contract between a State agency and a private highway developer depends on whether the contract reflects a "procurement."
Under SFP § 11-101(m)(1)(ii), a procurement involves, in pertinent part, "buying or otherwise obtaining supplies, services, construction, construction related services, architectural, [or] engineering services . . . ." A procurement contract "means an agreement in any form entered into by a unit for procurement." SFP § 11-101(n)(1). The Procurement Law applies "even if a resulting procurement contract will involve no expenditure by the State for services that are to be provided for the benefit of . . . the public at a State transportation facility . . . ." SFP § 11-202(3)(iv). Procurement includes a State agency's "leasing real or personal property as lessee." SFP § 11-101(m)(1)(i). It does not include a State agency leasing property as lessor.
A regulation adopted by the Board of Public Works elaborates on the scope of procurement:
 Specifically subject to these [procurement] regulations are:
 1. Procurements by a State agency, even if a resulting procurement contract will involve no expenditure by the State and will produce revenue for the State for services that are to be provided for the benefit of:
. . .
 (d) The public at a State transportation facility, unless a revenue producing contract involves:
 (i) A license, permit, or similar permission to use State facilities for activities related to the movement of passengers or goods, or for providing goods or services to passengers, patrons or tenants at a transportation facility, or for advertising or promotional purposes,
 (ii) A lease of State property under State Finance and Procurement Article, Title 10, Subtitle 3, Annotated Code of Maryland.
COMAR 21.01.03.03B(1)(d). This regulation thus exempts from the Procurement Law a State transportation facility that is leased to a private entity.[4] The lease would be subject to the approval of the Board of Public Works. SFP § 10-305.
One can envision a public/private partnership that satisfies this exemption. For example, if the private entity builds, operates, and maintains the toll highway, while the State merely leases the land, there would be no procurement. However, the exemption does not apply unless the contract satisfies all of the regulatory requirements. Without a particular arrangement to analyze, we cannot conclude whether an additional element of State involvement might cause the contract to be viewed as fundamentally a procurement contract, rather than a lease. Among the issues that may be considered in determining whether an agreement is a procurement are the following:
1. What is the term of the lease?
 2. To which entity are the toll revenues remitted and to which account are they deposited?
 3. Who primarily controls the management and operation of the highway?
 4. To what extent are State resources used in operations and maintenance?
 5. Are costs recovered from toll revenues for the use of State resources, including personnel?
 6. What percentage of the revenue generated by the highway is remitted to the State for rent and other services normally associated with a landlord?
These issues and the extent of State involvement in the operation and management of the highway must be analyzed to determine whether the agreement is exempt from procurement laws.[5]
 III Conclusion
In summary, it is our opinion that a public/private partnership with the MdTA to construct a toll highway is authorized under State law. It is further our opinion that the extent to which State procurement and minority business enterprise laws apply depends on the nature and extent of State involvement; such laws generally do not apply if the State acts simply as a lessor of property under a revenue-generating (or revenue-neutral) contract.
Very truly yours,
 J. Joseph Curran Attorney General
 Anita E. Hilson Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
[1] The public local laws of other counties would also need to be considered in assessing county authority to bar private highways.
[2] The MdTA also has eminent domain powers, but only as to certain projects financed through revenue bonds. TR § 4-206. The MdTA could also be the transferee of land acquired through SHA's or the Commission's condemnation powers.
[3] Article 25, § 236 of the Code prohibits a State agency, including the MdTA, from constructing a toll facility in nine Eastern Shore counties without the express consent of a majority of the affected county governments. This prohibition would extend to a public/private partnership as well.
[4] The minority business enterprise law is expressly made inapplicable to "leases of real property." SFP § 14-302(a).
[5] In Hill's Capitol Security, Inc., MSBCA 1615, 3 MSBCA ¶ 294 (1992), aff'd, Civil No. 87430 (Cir.Ct. for Mont. Cty. July 17, 1992), the Maryland State Board of Contract Appeals concluded that it lacked jurisdiction over a contract that met the jurisdictional exemption of COMAR 21.01.03.03B(1)(d) where the Maryland Aviation Administration ("MAA") contracted for the management and operation of the public automobile parking facilities at BWI Airport. The facilities were owned by MAA, MAA set the rates charged to users of the parking facilities; and the contractor paid MAA an operating fee. MAA also provided certain equipment at no cost to the contractor and contributed to some of the maintenance costs. The Board noted that MAA would spend approximately $4 million to support the contractor's efforts, a sum equal to 25% of total revenues. However, the Board reasoned that "where a hybrid contract exists [the Board] must use a balancing test to objectively determine the substantive character of the contract before it . . . . This test is further burdened with the fact that some activity required under the Contract takes place outside of State facilities and involves persons employed by MAA, not the general public. However, the Board finds that those aspects of the Contract are incidental." 3 MSBCA ¶ 294 at 10.
 *Page 269